MARSHALL RAY v. D. W. WILEY, *Administrator, et al.*

(Filed July 17, 1902.)

**NUNCUPATIVE WILL—Who Can Make.** Under the laws of the
Territory of Oklahoma, no one can make a nuncupative will, ex-
cept those in actual military service in the field or those doing
duty on shipboard at sea; and even those can only make a nun-
cupative will when they are at the time in actual contemplation,
fear or peril of death, or at the time are in expectation of im-
mediate death from an injury received the same day. One who at
the time is engaged in the pursuit of farming can not make a
valid nuncupative will.

(Syllabus by the Court.)

*Error from the District Court of Grant County; before John
L. McAtee, Trial Judge.*

*A. M. Mackey* and *Sam P. Ridings,* for plaintiff in error.

*P. C. Simmons* and *S. C. Burnette,* for defendants in
error.

Opinion of the court by

BURWELL, J.:    John M. Ray was a farmer living on a
homestead claim in Grant county.   On June 4, 1898, he was
sitting outside of his house in company with a young man by
the name of Elmer M. Thompson.   While sitting there en-
gaged in conversation a rabbit ran along by the side of a corn
crib which was located a short distance from the house.
Thompson remarked that the rabbit would be a good shot and
then went into the house and got the gun and when he re-
turned he walked out a few steps from the house and fired.
The bullet struck a stone and glanced, accidentally striking
Ray in the breast, and went clear though his body.   A

physician was called and stated to Ray, after examining him that he, (Ray,) was in a critical condition and if he had anything to say or any request to make he had better say it before the wound was dressed. Ray replied that he had a request to make and asked the physician to call in two young men, (one of whom was the young man who accidentally shot him,) and he then told these gentlemen that he desired Mr. and Mrs. Hawks to have all of his property after his debts were paid, and that he also desired them to have his claim if they could prove up on it and hold it. This statement was made on the same day he was shot, and he died from the effects of this gunshot wound some four days later.

On June 30, 1898, this request was reduced to writing, and was afterwards admitted to probate as the nuncupative will of the deceased, and the property all awarded by the probate court to Mr. and Mrs. Hawks. From this order Marshall Ray, the surviving brother of the deceased, appealed to the district court, and the judgment was there affirmed, and Ray then appealed to this court.

The appellant makes the point against the judgment that the written will is not the same as the spoken words; that the spoken words willed everything to Mr. and Mrs. Hawks while the written will gives everything to Mr. Hawks. The other side, however, contends that this is immaterial, because the probate court and the district court too, ordered the property distributed pursuant to the spoken words, and other questions are raised and discussed, but after examining our own statute we deem it unnecessary to pass upon any of them.

John M. Ray was engaged in one of the ordinary civil vocations of life and therefore was not one of the persons who can make a nuncupative will, even though he may have been at the time the words were spoken in expectation of immediate death.

By section 6170 of the Statutes of Oklahoma of 1893, it is provided who may make a nuncupative will, and under what circumstances one can be made.

"Sec. 6170.   To make a nuncupative will valid, and to entitle it to be admitted to probate, the following requisites must be observed:

"First:  .The estate bequeathed must   not   exceed   in value the sum of one thousand dollars.

"Second:  It must be proved by two witnesses who were present at the making thereof, one of whom was asked by the testator at the time to bear witness that such was his will, or to that effect.

"Third:  The decedent must at the time have been in actual military service in the field, or doing duty on shipboard at sea, and in either case in actual contemplation, fear or peril of death, or the decedent must have been at the time in expectation of immediate death from an injury received the same day."

This section states that to make a nuncupative will valid, the decedent must at the time, have been in actual military service in the field, or doing duty on shipboard at sea.   Even the soldier who is not in the field nor the person doing duty on shipboard not at sea, cannot make a nuncupative will.   The right to make a nuncupative will is confined to the two classes, viz:   Those in actual military service in the field, and those doing duty on shipboard at sea, and all other persons of every character and occupation are ex-

cluded from this right.    Then the latter part of sub-division three of section 6170 states the circumstances under which these two classes may make a nuncupative will.  In addition to being in military service in the field, or doing duty on shipboard at sea, the decedent must at the time have been in  actual  contemplation, fear or peril of death, or such soldier or sailor in addition to being in actual military service in the field or doing duty on shipboard at sea, must have been at the time in expectation of immediate death from an injury received the same day.    This statute is plain and unambiguous, and no matter what rule obtains in other jurisdictions, in this territory one engaged in the ordinary vocations of life cannot under any circumstances make a nuncupative will.    Hence, the will in question could not pass the title to the property of the deceased to Mr. and Mrs. Hawks, but the property should be distributed by the probate  court  under  the  law of succession, the same as though the deceased had not attempted to make a nuncupative will.

For the reasons herein stated the judgment of the district court is hereby reversed at the cost of the appellants, and the case remanded with directions that the lower court proceed in conformity with this opinion.

Irwin, J., absent; all of the other Justices concurring.